IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| BENNY FEATHERSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 04-2157 Ml/P |
| CHARMS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment, filed February 15, 2005. Plaintiff filed an opposition on March 24, 2005. Defendant filed a reply on April 8, 2005. For the following reasons, Defendant's motion is GRANTED.

Also before the Court is Plaintiff's Motion for Partial Summary Judgment, filed March 15, 2005. Defendant filed a response on April 18, 2005. For the following reasons, Plaintiff's motion is DENIED.

**I. BACKGROUND**

The instant case arises out of the termination of Plaintiff's employment with Defendant Charms Company, a confectionary manufacturer located in Covington, Tennessee, for excessive absenteeism. On March 8, 2004, Plaintiff filed a complaint alleging that his termination violated the Family and

Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et. seq*, because Defendant purportedly refused to allow Plaintiff to return from leave based upon an FMLA qualifying event.

Plaintiff was employed by Defendant as a Batch Roller/RLM Operator from February 26, 1999, until his employment was terminated for excessive absenteeism on January 14, 2003. It is undisputed that, prior to his termination, Plaintiff had received six disciplinary warnings for being absent from work. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 2.)[1]

On January 8 and 9, 2003, Plaintiff was absent from work. According to the director of Human Resources for Defendant, Michael Gray, Plaintiff reported by telephone that he was sick on those dates. (Id., Ex. 1, Aff. of Michael Gray ("Gray Aff.") ¶ 12.)

When Plaintiff arrived to work on his next scheduled work day, January 13, 2003, Plaintiff handed a doctor's note to his

---

[1] In his response to Defendant's Motion for Summary Judgment, Plaintiff did not respond to Defendant's serially numbered statement of undisputed facts, as required by Local Rule 7.2(d)(3)("the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue."). Rather, Plaintiff included a two page narrative "Facts" section, in which Plaintiff did not dispute the facts in Defendant's statement of undisputed facts. Accordingly, the Court finds that Plaintiff does not dispute the facts relied upon by Defendant in its motion.

2

immediate supervisor, Donald Harchfield. (Id., Ex. 4, Dep. of Donald Harchfield ("Harchfield Dep.") at 23:1-9.)  The note, dated January 8, 2003, is entitled "Certificate to Return to Work or School" and states that "Benny Featherston is my patient and has been in my care from 1-8-03 to 1-9-03 and is able to return to work/school on 1-10-03." (Aff. of Pl., Ex. 1.)  The document is not signed by any physician, but rather is stamped with the name and address of the May Medical Group.  The certificate does not indicate for what ailment Plaintiff was under a doctor's care.

After Plaintiff presented Mr. Harchfield with the note, he handed it back to Plaintiff.  (Harchfield Dep. at 23:9.) Plaintiff was then instructed not to punch his time card, and to meet with Production Manager Ricky Ambrose, Mr. Harchfield's supervisor, and Mr. Gray at 9:00 a.m. (Gray Aff. ¶ 12.)  Mr. Harchfield testified at his deposition that he informed Mr. Ambrose about Plaintiff's having handing him the doctor's note some time within the next few days. (Harchfield Dep. at 25:18-26:12.)

According to Mr. Gray's affidavit, during the January 13, 2003, meeting, Plaintiff stated that he was absent due to having diarrhea on January 8 and 9 and did not provide any medical documentation to support his absence.  (Gray Aff. ¶ 13.)  The parties appear to dispute whether Mr. Ambrose was aware that

3

Plaintiff had handed Mr. Harchfield the doctor's note on the morning of January 13.[2]  Plaintiff does not contend or point to any evidence in the record to show, however, that the note was presented either to Mr. Ambrose or Mr. Gray during the January 13, 2003, meeting.  On January 14, 2003, Mr. Gray called Plaintiff to inform him that he had been terminated. (Gray Aff. ¶ 15.)

According to Plaintiff's Affidavit, Plaintiff was diagnosed with a hernia on February 3, 2003, and underwent surgery for the hernia on February 7, 2003. (Aff. of Pl.)  It is undisputed that Plaintiff did not ever provide Charms with any notice of that diagnosis or his surgery.

In May of 2003, Plaintiff filed for unemployment benefits with the Tennessee Department of Workforce and Labor Development and a telephone unemployment benefits hearing was held.  After that hearing, Mr. Gray was shown for the first time, by Defendant's legal counsel, medical documentation regarding Plaintiff's illness that was presented at the unemployment

---

[2] When asked during his deposition about whether Mr. Ambrose knew that Plaintiff handed Mr. Harchfield a doctor's note during the morning of January 13, 2003, Mr. Ambrose recalled being told that Plaintiff had handed Mr. Harchfield a piece of paper, but did not recall whether he was told that the paper Plaintiff handed to Mr. Harchfield was a doctor's note. (Dep. of Ricky Ambrose ("Ambrose Dep."), attached as unnumbered exhibit to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 28:1-30:11.)

benefits hearing.[3] (Gray Aff. ¶ 19.) That documentation included Plaintiff's January 8, 2003, doctor's note. (Id.)

On June 11, 2003, an administrative hearing was held before the Tennessee Department of Labor and Workforce Development to determine whether Plaintiff was entitled to unemployment compensation benefits subsequent to his termination from employment with Defendant. The Appeals Tribunal entered the following findings of fact:

> Claimant's most recent employment prior to filing this claim was with Charms Co. from February 26, 1999 until January 14, 2003, as a RLM operator. Claimant was absent from work several days during 2002. Claimant had doctor's excuses for all of his absences except two. His last period of absence was from January 7, 2003 to January 9, 2003. Claimant brought a doctor's note to employer. Employer discharged the claimant on January 14, 2003, for excessive absenteeism. Claimant had surgery in February 2003. Claimant was unable to perform work starting on February 3, 2003. Claimant was released to return to work on May 8, 2003. Claimant filed a claim for unemployment benefits on March 5, 2003.

(Decision of Appeals Tribunal, attached as unnumbered exhibit to Pl.'s Mot. for Partial Summ. J.) The Appeals Tribunal found Plaintiff eligible for unemployment benefits. (Id.) That decision was upheld by the Board of Review of the Tennessee Department of Labor and Workforce Development, which adopted the facts found by the Appeals Tribunal. (Board of Review Decision,

---

[3]In his affidavit, Mr. Gray also notes that, over a month after Plaintiff's termination, he learned for the first time from other employees that Plaintiff had undergone surgery for a hernia. (Gray Aff. ¶ 18.)

attached as unnumbered exhibit to Pl.'s Mot. for Partial Summ. J.)

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159

6

F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### III. Analysis

Both Defendant and Plaintiff have moved for summary judgment in this case. The Court will analyze their motions in turn.

#### A. Defendant's Motion for Summary Judgment

Plaintiff contends that Defendant terminated his employment in violation of the FMLA because his absences from work on January 8 and 9, 2003, were due to a "serious health condition" as defined by the FMLA and therefore he should have been allowed to return to work following his illness. Defendant contends that, at the time of his January absences, Plaintiff did not suffer from a "serious health condition" and that, even if he did, Plaintiff did not request leave or provide Defendant with adequate notice of his need for leave due to a serious health condition as required by the FMLA.

7

### 1. FMLA Requirements

The FMLA requires employers to provide up to twelve workweeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined by the FMLA as "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care in a hospital, hospice, or residential medical care facility; or ... continuing treatment by a health care provider. 29 U.S.C. § 2611(11). United States Department of Labor regulations implementing the FMLA define a serious health condition involving continuing medical treatment by a medical provider as including "[a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of <u>more than three consecutive calendar days</u> ...." 29 C.F.R. § 825.114. It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1).

When an employee's need for FMLA leave is foreseeable, an employee who wishes to request leave under the FMLA must generally provide thirty days' notice to the employer. 29 U.S.C.

8

§ 2612(e).[4]  When the need for FMLA leave is not forseeable, an employee "should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case.  It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible."  29 C.F.R. § 825.303(a).

In light of the FMLA and the relevant Department of Labor Regulations implementing the statute, the United States Court of Appeals for the Sixth Circuit has described the notice requirement of the FMLA as follows:

> To invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave.  However, an employee does not have to expressly assert his right to take leave as a right under the FMLA.  Because an employee need not expressly invoke the FMLA, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.  An employee gives his employer sufficient notice that he is

---

[4] Specifically, the FMLA requires that an employee:
> shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2)(B).  The employee need not expressly mention the FMLA when requesting leave, but must convey to the employer information reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition.  29 C.F.R. § 825.302(c).

9

> requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the [FMLA] has occurred ... What is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case.

Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 723-24 (6th Cir. 2003)(citations and internal quotation marks omitted).

### 2. The Adequacy of Plaintiff's Notice to Defendant

It is undisputed that Plaintiff did not specifically request FMLA leave from Defendant. However, as noted above, Plaintiff is not required to specifically mention the FMLA when requesting leave. Plaintiff contends that furnishing a doctor's note to his supervisor, Don Harchfield, on the morning of January 13, 2003, was sufficient to put Defendant on notice of his request for FMLA leave. Defendant contends that Plaintiff was not, at the time that note was presented, suffering a serious health condition and that the presentation of the note was not sufficient notice of a request for FMLA leave.

Drawing all inferences in favor of the Plaintiff, the Court assumes that Defendant was aware of the substance of the January 8, 2003, certificate from May Medical Group, on January 13, 2003. Nonetheless, the Court finds that Plaintiff's presentation of the January 8, 2003, certificate was not sufficient to put Defendant on notice of his need for FMLA leave due to a serious health condition.

10

The certificate states that Plaintiff was under a doctor's care for only two days – January 8 and 9, 2003. The Department of Labor regulations implementing the FMLA specify that in order for an illness that does not result in inpatient medical care to be considered a "serious health condition," it must involve "[a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of <u>more than three consecutive calendar days</u>...." 29 C.F.R. § 825.114(a)(2)(i)(emphasis added). As of January 13, 2003, Defendant could only have known that Plaintiff had been absent from work for two days due to an onset of diarrhea. That was simply not "enough information for the employer to reasonably conclude that an event described in the [FMLA] has occurred." <u>Cavin</u>, 346 F.3d at 724.[5]

Plaintiff asserts that there exists a "genuine issue of material fact as to whether the illness that resulted in his termination was the result of [his later diagnosed hernia]." However, even assuming that Plaintiff's hernia is a serious health condition under the FMLA, Plaintiff points to no admissible evidence in the record that could indicate that his

---

[5] Plaintiff contends that Defendant failed to investigate the cause of Plaintiff's illness, however, Plaintiff fails to point to sufficient facts in the record to establish that Defendant had any reason, as of January 13, 2003, to investigate whether Plaintiff was suffering from a serious health condition.

11

January 8 and 9, 2003, absences were attributable to his hernia.[6] Absent such evidence – the affidavit of Plaintiff's physician, for example – no reasonable juror could find that the absences were attributable to a serious health condition and therefore Plaintiff cannot establish, as a matter of law, that he put Defendant on notice that he had a serious health condition that qualified for leave under the FMLA.

Even assuming that Plaintiff's affidavit were sufficient to link his January absences to his later diagnosed hernia, however, it is undisputed that Plaintiff never provided Defendant with notice of that diagnosis or of his surgery, let alone of any link between his January absences and that diagnosis.[7] The Court

---

[6] The only evidence to which Plaintiff points to link his illness on January 8 and 9 to his hernia is his own affidavit, which states: "I was under a doctor's care for acute abdominal pain on January 8 and 9, 2003 for what was later determined to be a massive hernia. I was diagnosed with the hernia on February 3, 2003 and underwent surgery for the hernia on February 7, 2003." (Aff. of Pl.) Plaintiff, however, does not point to any evidence that he had personal knowledge of a link between his abdominal pain on January 8 and 9, and his hernia, or to any evidence in the record of a diagnosis by a medical professional linking his January 8 and 9 abdominal pain to his later diagnosed hernia. Plaintiff's statements regarding his diagnosis are inadmissible as not within his personal knowledge under Federal Rule of Evidence 602 and as hearsay under Federal Rule of Evidence 801 and 802 for which no exception applies pursuant to Federal Rule of Evidence 803.

[7] Defendant first learned that Plaintiff had a hernia operation by word of mouth approximately one month after he was terminated, and only received notice of any medical documentation regarding Plaintiff's operation subsequent to Plaintiff's May, 2003, unemployment benefits hearing.

12

finds that Plaintiff's failure to provide Defendant with timely notice of his later diagnosis and surgery prevented Defendant from concluding that Plaintiff suffered from a serious health condition that would require compliance with the FMLA. See Brenneman v. MedCentral Health Sys., 366 F.3d 412, 423 (6th Cir. 2004)(finding employee did not give sufficient notice to employer of need for FMLA leave where employee failed to notify employer within one or two days that unforseeable absence was due to serious health condition known to employee).[8]

The Court therefore finds that no genuine issues of material fact exist regarding whether Plaintiff provided adequate notice to Defendant of his asserted need for FMLA leave. Because Plaintiff fails to point to sufficient evidence in the record to show that adequate notice was provided, Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment is GRANTED.

### B. Plaintiff's Motion for Summary Judgment

In his motion, Plaintiff contends that Defendant is collaterally estopped from relitigating the factual issues

---

[8] In Brenneman, an employee missed a day of work due to a diabetic episode, however, when he called in sick, he merely told his employer that he "wasn't doing well and ... wouldn't be in today." Brenneman, 366 F.3d at 423. The plaintiff in Brenneman did not advise the employer that his absence was due to his diabetes until five days after his absence. The Sixth Circuit held that such untimely notice was inadequate under the regulations implementing the FMLA. Id. at 423-24 (citations omitted).

13

determined by the Tennessee Department of Labor and Workforce Development Appeals Tribunal in his unemployment benefits hearing. In determining the preclusive effect, if any, of a state administrative agency determination, this Court looks to state law. <u>Nelson v. Jefferson County, Kentucky</u>, 863 F.2d 18, 19 (6th Cir. 1989). Tennessee Code Annotated § 50-7-304(k) provides that:

> No finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive in any separate or subsequent action or proceeding in another forum, except proceedings under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts.

Tenn. Code Ann. § 50-7-304(k). Accordingly, under Tennessee law, neither the findings of the Unemployment Appeals Tribunal nor the Board of Review have any preclusive affect on the parties. Even if the findings could have a preclusive effect, however, the findings themselves are irrelevant to this case because they relate to the determination of whether Plaintiff was entitled to unemployment benefits, not FMLA leave, and do not involve any facts that are disputed in this case.[9]

---

[9] Plaintiff cites a memorandum opinion by the Circuit Court of Shelby County in contending that § 50-7-304 violates the Separation of Powers Doctrine of the Tennessee Constitution. (Memorandum Opinion and Order on Constitutionality of T.C.A. 50-7-304(k), attached as exhibit to Pl.'s Mot. for Partial Summ. J.) In determining Tennessee law, however, federal district courts look to the holdings of the Tennessee Supreme Court or to the
(continued...)

14

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Partial Summary Judgment is DENIED, and Plaintiff's case is DISMISSED with prejudice.

So ORDERED this 10th day of May, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

(...continued)
Tennessee Court of Appeals. See Arnett v. Myers, 281 F.3d 552, 565 (6th Cir. 2002). State trial court decisions are not regarded as setting precedent and therefore are not binding on this Court's determination of Tennessee law. Bradley v. General Motors Corp., 512 F.2d 602, 605 (6th Cir. 1975). Plaintiff points to, and the Court has found, no holding of the Tennessee Supreme Court or Tennessee Court of Appeals finding that § 50-7-304(k) is unconstitutional under Tennessee law. In fact, at least two decisions of the Tennessee Court of Appeals have enforced Tenn. Code Ann. § 50-7-304(k) to deny the preclusive effect of findings made pursuant to a claim for unemployment compensation. See Mangrum v. Wal-Mart Stores, Inc., 950 S.W. 2d 33, 36-37 (Tenn. Ct. App. 1997); Barnes v. Goodyear, No. W2000-01607-COA-RM-CV, 2001 WL 568033 at *5, n.1, (Tenn. Ct. App. May 25, 2001). Accordingly, the Court finds Plaintiff's argument to the contrary unavailing.

15

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 26 in case 2:04-CV-02157 was distributed by fax, mail, or direct printing on May 16, 2005 to the parties listed.

---

Valerie B. Speakman
JACKSON SHIELDS YEISER HOLT SPEAKMAN & LUCAS
262 German Oak Dr.
Memphis, TN 38018

J. Barney Witherington
LAW OFFICE OF J. BARNEY WITHERINGTON IV
P.O. Box 922
Covington, TN 38019

Ted M. Yeiser
JACKSON SHIELDS YEISER HOLT SPEAKMAN & LUCAS
262 German Oak Dr.
Memphis, TN 38018

Honorable Jon McCalla
US DISTRICT COURT